DAVID C. HAWKES; SBN: 224241
BLANCHARD, KRASNER & FRENCH
dhawkes@bkflaw.com
800 Silverado St., 2nd Floor
La Jolla, CA 92037
Telephone:   (858) 551-2440
Facsimile:    (858) 551-2434

DAVID A. HUCH; SBN: 222892
LAW OFFICE OF DAVID A. HUCH
david.a.huch@gmail.com
12223 Highland Ave., Ste. 106-574
Rancho Cucamonga, CA 91739
Telephone:   (909) 463-6363
Facsimile:    (909) 614-7008

STEPHEN MATCHA; SBN: 249176
MATCHA LAW
steve@matchalaw.com
13223 Black Mountain Rd., #233
San Diego, CA 92129-2699
Telephone: (619) 565-3865

Attorneys for Plaintiff
ARIANA PRESTON

[*Additional Counsel on Following Page*]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANA PRESTON, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> PORCH.COM, INC., a Delaware Corporation; HIRE A HELPER LLC, a California Limited Liability Company; KERI MILLER, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | **Case No. 21CV168-JLS(BLM)** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: January 20, 2022 <br> Time: 130 p.m. <br><br> Dist. Judge: Hon. Janis L. Sammartino <br> Mag. Judge: Hon. Barbara L. Major <br><br> Complaint Filed: November 23, 2020 <br> Trial Date: None Set |

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................... 1

II. PROCEDURAL AND FACTUAL HISTORY ......................................................... 2

    A.  The Parties ........................................................................................................ 2

    B.  The Pleadings ................................................................................................... 4

    C.  Discovery and Investigation Completed Before Settlement ............................ 6

    D.  Settlement Negotiations ................................................................................... 7

III. SUMMARY OF SETTLEMENT TERMS ............................................................. 8

    A.  Composition of the Settlement Class ............................................................... 8

    B.  Amount of Settlement ...................................................................................... 8

        1.  Settlement Administration Fees & Costs ................................................ 9

        2.  Named Plaintiff Service Award ............................................................... 9

        3.  Class Counsel's Attorneys' Fees ............................................................. 9

        4.  Class Counsel's Costs .............................................................................. 9

        5.  PAGA Penalties ...................................................................................... 10

    C.  Calculation of Individual Settlement Payments ............................................ 10

    D.  Limited Release by Class ............................................................................... 11

    E.  Notice, Opt Out and Objection Procedures ................................................... 11

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..................... 12

    A.  The Settlement Resulted from Informed Arm's Length Negotiations ...................... 13

    B.  The Class-Wide Release is Narrowly Tailored .......................................................... 13

    C.  The Amount Offered in Settlement Falls Within the Range of Possible Approval .... 14

    D.  The Proposed Notice Plan Complies with Applicable Law........................................ 16

    E.  The Proposed Payments to Plaintiffs for Attorneys' Fees and Litigation Expenses Are Reasonable ......................................................................................... 18

    F.  The Proposed Enhancement Award to Plaintiffs Is Reasonable ............................... 19

**V.  CLASS CERTIFICATION IS APPROPRIATE** .............................................................20

    A.  The Class is Sufficiently Numerous ...........................................................20

    B.  There are Common Questions of Fact and Law............................................21

    C.  The Class Representative's Claims is Typical of Those of Other Class Members.....21

    D.  Class Representative and Class Counsel Adequately Represent Class Members.......22

    E.  Common Issues of Law and Fact Predominate...........................................22

**VI. CONCLUSION** ...........................................................................................23

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Churchill Vill., LLC v. Gen. Elec.*
    361 F.3d 566, 575 (9th Cir. 2004) ................................................................ 17

*Farrell v. Bank of Amer., N.A.*
    327 F.R.D. 422, 430 (S.D. Cal. 2018) ......................................................... 15

*Fleming v. Covidien Inc.*
    2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011) ........................... 16

*Frieri v. Sysco Corp.*
    2019 U.S. Dist. LEXIS 207481 ................................................................... 19

*Glass v. UBS Fin. Servs.*
    2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 27 2007) ...................... 15, 19, 20

*Greko v. Diesel U.S.A., Inc.*
    2013 U.S. Dist. LEXIS 60114 (N.D. Cal. Apr. 26, 2013) .............................. 15

*Guarantee Ins. Agency Co. v. Mid-Continental Realty Co.*
    57 F.R.D. 555 (N.D. Ill. 1972) .................................................................... 22

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011, 1020 (9th Cir. 1998) ...................................................... 21, 22

*Harris v. Vector Mktg. Corp.*
    2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .............................. 20

*Hesse v. Sprint Corp.*
    598 F.3d 581, 590 (9th Cir. 2010) ............................................................... 13

*Huddleston v. Harrison Global, LLC*
    2018 U.S. Dist. LEXIS 133018 (S.D. Cal. Aug. 7, 2018) .............................. 11

*Hudson v. Libre Tech., Inc.*
    2019 U.S. Dist. LEXIS 196964 (S.D. Cal. Nov. 13, 2019) ......................... 9, 14

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 15

MEMO. P&A RE PRELIM.
APPROVAL
21CV168-JLS(BLM)

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*

    571 F.3d 953 (9th Cir. 2009) ....................................................................... 23

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*

    244 F.3d 1152 (9th Cir. 2001) .................................................................... 23

*Louie v. Kaiser Foundation Health Plan, Inc.*

    2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 06, 2008) ........................... 19

*Nguyen v. Radient Pharm. Corp.*

    287 F.R.D. 563 (C.D. Cal. 2012) ............................................................... 21

*Parsons v. Ryan*

    754 F.3d 657, 685 (9th Cir. 2014) .............................................................. 21

*Rodriguez v. W. Publ'g Corp.*

    56 F.3d 948, 965 (9th Cir. 2009) .......................................................... 13, 20

*Shaw v. Toshiba America Information Systems, Inc.*

    91 F. Supp. 2d 942 (E.D.Tex. 2000) .......................................................... 18

*Stanton v. Boeing Co.*

    327 F.3d 938 (9th Cir. 2003) ...................................................................... 20

*Tapia v. Zale Del. Inc.*

    2017 U.S. Dist. LEXIS 59869 (S.D. Cal. Apr. 18, 2017) ........................... 19

*Thompson v. Costco Wholesale Corp.*

    2017 U.S. Dist. LEXIS 24964 (S.D. Cal. Feb 22, 2017) ...................... 12, 13

*Van Vranken v. Atlantic Richfield Co.*

    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................ 18, 19

*Vasquez v. Coast Valley Roofing, Inc.*

    670 F.Supp.2d 1114 (E.D. Cal. 2009) ........................................................ 14

*Walters v. Target Corp.*

    2019 U.S. Dist. LEXIS 207489 (S.D. Cal. Dec. 4, 2019) .................. 2, 12, 13

*Watkins v. Hireright, Inc.*

    2016 U.S. Dist. LEXIS 136200 (S.D. Cal. Sept. 30, 2016) ........................ 19

MEMO. P&A RE PRELIM.
APPROVAL
21CV168-JLS(BLM)

**STATE CASES**

*Chavez v. Netflix, Inc.*

  (2008) 162 Cal. App. 4th 43, 66 .................................................................. 18

*Huff v. Securitas Security Servs. USA, Inc.*

  (2018) 23 Cal. App. 5th 745, 759 ............................................................... 16

*Thurman v. Bayshore Transit Mgmt., Inc.*

  (2012) 203 Cal. App. 4th 1112, 1135 ......................................................... 16


**STATUTES**

29 USC § 207(e)) ..................................................................................................... 1

California Code of Civil Procedure § 384 ............................................................... 11

Cal. Code Regs. tit. 8, § 11040 ................................................................................ 1

Cal. Lab. Code §2698, et seq. (PAGA) ......................................................... 5, 10, 16

Fed. R. Civ. P. 23. ........................................................................................ *Passim.*


**OTHER AUTHORITIES**

4 Newberg on Class Actions (4th Ed. 2002 and Supp. 2004) ....................... 14, 18, 21

Manual for Complex Litigation, Fourth § 21.632 (FSC 2004)) .................................. 8

MEMO. P&A RE PRELIM.
APPROVAL
21CV168-JLS(BLM)

## I. INTRODUCTION

Plaintiff ARIANA PRESTON ("Plaintiff") respectfully submits this memorandum of points and authorities in support of her unopposed motion for preliminary approval of a class action settlement reached with Defendants PORCH.COM, HIRE A HELPER LLC, KANDELA, LLC and ELITE INSURANCE GROUP, INC. ("Defendants") (collectively, "the Parties").

Plaintiff's class action claims challenge Defendants' common policy of failing to include commissions and non-discretionary bonuses in Plaintiff's and similarly situated employees' overtime rates of pay. Both California and Federal law require overtime rate calculations to include "all remuneration for employment paid to, or on behalf of, the employee." (Cal. Code Regs. tit. 8, § 11040, subd. 3(a)(1); 29 USC § 207(e)).  Accordingly, when a California employer calculates an employee's regular rate of pay for purposes of overtime calculation, commissions must be calculated into the formula.  Plaintiff alleges that Defendants did not do so.

The Parties attended a full-day mediation on July 28, 2021 with experienced class action mediator Michael D. Young of JUDICATE WEST. The mediation successfully concluded with the acceptance of a mediator's proposal and execution of a memorandum of understanding. Thereafter, the Parties executed a comprehensive class-wide settlement agreement wherein Defendant has agreed to stipulate to class certification and pay a maximum settlement of $500,000 (inclusive of attorneys' fees, litigation costs, PAGA penalties and administration costs) on behalf of approximately 236 current and former employees.  The proposed settlement is "all-in" non-reversionary, and if approved, will yield an average individual settlement award of approximately $1,196 per class member. *See* Declaration of David C. Hawkes in Support of Preliminary Approval of Class Action Settlement ("Hawkes Decl."), ¶ 21.

At issue on this Motion for Preliminary Approval is whether the settlement

1

appears to be "within the range of possible approvable" as to warrant sending notice to the Class. *Walters v. Target Corp.*, 2019 U.S. Dist. LEXIS 207489, *13 (S.D. Cal. Dec. 4, 2019) (quoting Manual for Complex Litigation, Fourth § 21.632 (FSC 2004)). As demonstrated herein, the proposed settlement is highly advantageous to the plaintiff Class Members and merits preliminary approval by the Court. By this motion and in accordance with Federal Rules of Civil Procedure, Rule 23(e), the parties request that the Court:

    (1)    Grant preliminary approval of the Settlement reached in this action;

    (2)    Grant conditional certification of the proposed Class;

    (3)    Appoint the named Plaintiff as Class Representative and her attorneys as Class Counsel in this action;

    (4)    Approve the proposed form of notice to the Class;

    (5)    Establish a schedule for the dissemination of notice to Class members as well as deadlines for Class members to opt-out or object to the Settlement; and

    (6)    Schedule a hearing on final approval of the Settlement and Plaintiffs' counsel's application for attorneys' fees and litigation expenses at which Class members may be heard.

## II.    PROCEDURAL AND FACTUAL HISTORY

### A.    The Parties

Co-Defendant PORCH.COM, INC. ("PORCH") is a publicly traded (NASDAQ: PRCH) corporation with its principal place of business located in Seattle, Washington. According to its website, www.porch.com, Porch is a "vertical SaaS (software as a service) company" that offers a "full range of products and services where homeowners can: Compare and buy home and auto insurance policies...Have their entire move coordinated...Discover and install the best home automation and security systems...Compare internet and TV options for

2

the new home...Book small handyman jobs...Compare bids from pros who can complete bigger jobs..." (Hawkes Decl. ¶ 4.)

Co-Defendant HIRE A HELPER LLC ("Hire A Helper") is a California limited liability company with its principal place of business located in Oceanside, California. According to its website, www.hireahelper.com, Hire A Helper is the "best reviewed moving service provider on the Internet" and has "over 2,000 incredible moving companies signed on as part of our mover marketplace." According to Defendants' Notice of Removal (Dkt. Rpt. 1, Jan. 28, 2021), Hire A Helper is a wholly owned subsidiary of PORCH.COM, Inc. *Id.*, ¶ 33: "Defendant Hire A Helper, LLC was acquired by defendant Porch.com, Inc. in February 2017." (Hawkes Decl. ¶ 5.)

According to PORCH'S recently filed Form 10-Q for the period ending June 30, 2021, Co-Defendant ELITE INSURANCE GROUP, INC. ("ELITE INSURANCE") is a "wholly-owned licensed insurance agency" that was formed by PORCH to "expand[] our lines of business to include home, auto, flood and umbrella insurance..." (Hawkes Decl. ¶ 6.)

According to PORCH'S recently filed Form 10-k for the year ending December 31, 2021, Co-Defendant KANDELA, LLC. ("KANDELA") is a wholly-owned brand that "offers a leading moving concierge product for utility customers...and Kandela also provide[s] Porch access to customers." (Hawkes Decl. ¶ 7.)

According to PORCH'S Form 10-k for the year ending December 31, 2019, Co-Defendant SERVIZ, INC. ("SERVIZ") was acquired by PORCH in 2018. Headquartered in Los Angles, California, SERVIZ maintains thousands of home-service professionals on its online platform, which allows service providers to manage their projects within the platform. (Hawkes Decl. ¶ 8.)[1]

---

[1] Following acceptance of the mediator's proposal, Plaintiff amended her complaint to add Co-Defendants ELITE INSURANCE, KANDELA and SERVIZ since these

3

Plaintiff was first employed by HIRE A HELPER LLC in San Diego County from approximately April 30, 2014 to February 2017, and then later employed by PORCH.COM, INC. after the acquisition until October 2019. At all relevant times, Plaintiff worked for Defendants as a non-exempt corporate Customer Service Representative ("CSR"). Her role included maintaining relationships with moving companies, providing customer service for the Company's clients, and processing work orders. She was paid an hourly rate and regularly earned commissions. (Hawkes Decl. ¶__.)

**B.     The Pleadings**

On November 23, 2020, Plaintiff filed a class action Complaint in the San Diego County Superior Court on behalf of herself and all other similarly situated employees who worked for Defendants from November 23, 2016 through the present, Case No. 37-2020-00042869-CU-OE-CTL ("the Action").  The Complaint alleged class action claims for overtime violations, failure to pay wages upon separation, and unlawful and unfair business practices.  The Complaint also alleged individual claims of retaliation, discrimination, hostile work environment, failure to engage in the interactive process, failure to accommodate, failure to prevent discrimination, harassment and retaliation and wrongful constructive termination.[2]

On January 28, 2021, Defendants removed the Action to the United States District Court, Southern District of California on the basis of diversity jurisdiction, and the Action was assigned Case No. 21CV168-JLS (BLM). *See* Dkt. No. 1.

On August 22, 2021, Plaintiff sent a notice to the Labor and Workforce Development Agency ("LWDA") alleging claims for meal and rest period violations, failure to pay all wages earned, overtime violations, wage statement violations, failure to pay vacation wages at termination, failure to reimburse

---

newly acquired entities have employed individuals that fall within the settlement class description. (Hawkes Decl., ¶ 9.)

[2] Plaintiff's individual claims were settled confidentially via a separate, general release.

4

business expenses, and failure to pay wages upon separation.  On or about October 26, 2021, the sixty-five (65) day notice period expired as to all Defendants, and the LWDA did not take any action to investigate or prosecute this matter. Plaintiff did not receive a written notice from the LWDA that it intended to investigate any of the claims outlined in the PAGA notice letter and, as a result, Plaintiff was authorized to act as Private Attorney Generals to negotiate and resolve any PAGA claims of the representative class on behalf of the LWDA. (Hawkes Decl. ¶ 14.)

In connection with the proposed settlement, Plaintiff seeks leave to file a First Amended Complaint in the Action alleging a PAGA representative claim under California's Private Attorneys General Act (Cal. Lab. Code §2699, *et seq.*) asserting meal and rest period violations, failure to pay all wages earned, overtime violations, wage statement violations, failure to pay vacation wages at termination, failure to reimburse business expenses, and failure to pay wages upon separation and related derivative claims. Plaintiff's First Amended Complaint alleges representative claims on behalf of the putative class and/or PAGA representative class for: (1) Failure to Pay All Compensation Owed at Separation; (2) Failure to Pay All Wages Earned; (3) Failure to Provide Accurate Itemized Wage Statements; (4) Failure to Compensate for Missed, Late or On Duty Meal Periods; (5) Failure to Compensate for Missed, Late or On Duty Rest Periods; (6) Failure to Pay Vacation Wages at Termination; (7) Unlawful Overtime Policies and Procedures; (8) Failure to Provide Timely, Uninterrupted, 30-Minute Meal Periods, (9) Failure to Maintain Accurate Time Records, (10) Failure to Pay Overtime Compensation, (11) Failure to Reimburse Business Expenses, and (12) Enforcement of Labor Code § 2968 et seq. (PAGA).

These proposed amendments were included in the Settlement in order to include all of Plaintiff's wage and hour theories of liability, some of which were discovered immediately before the July 28, 2021 mediation. Defendants adamantly deny all material allegations set forth in the original Complaint and the First

Amended Complaint, as well as the August 22, 2021, PAGA notice letter sent to the LWDA.  (Hawkes Decl., ¶ 16.)

### C.    Discovery and Investigation Completed Before Settlement

After the matter was at issue, the Parties began to engage in informal and formal discovery to understand the nature of the allegations and the scope of potential liability.  The Parties began to discuss the possibility of mediation and ultimately stayed formal discovery to focus their efforts on potential resolution. Defendants provided Plaintiff's counsel with pertinent data for the Class Members so that the Parties could fully-investigate the claims at issue and understand their strengths and weaknesses.

In preparation for mediation, Defendants provided Plaintiff's counsel with an extremely large sampling of data, including putative class members' electronically stored time records and payroll records for pay periods during the months of December 2016, March 2017, June 2017, September 2017, December 2017, March 2018, June 2018, September 2018, December 2018, March 2019, June 2019, September 2019, December 2019, March 2020, June 2020, September 2020, December 2020 and March 2021. Defendants also provided Plaintiffs' counsel with (1) calculations regarding the size and scope of the putative class, including number of employees per pay period, job descriptions, commission pay and hourly rates; (2)  all written policies, including training materials, applicable to non-exempt employees in the State of California during the period of November 23, 2016 to present with respect to the following issues: (a) timekeeping, (b) commission agreements, structures and payment terms, (c) non-discretionary bonus agreements, structures and payment terms, (d) overtime, (e) meal and rest breaks, (f) vacation pay and related benefits, and (g) wage statements and payroll records; and (3) disclosure of the related entities with a presence in California that were acquired by PORCH who have employed putative class members during the relevant time period.  (Hawkes Decl., ¶¶ 17-18.)

Based on the extensive informal discovery and investigation undertaken, Plaintiff was able to engage in well-informed settlement negotiations with Defendants. (Hawkes Decl., ¶ 19.)

### D.    Settlement Negotiations

On July 28, 2021, the Parties attended a full-day mediation, via videoconferencing, with experienced mediator Michael D. Young, Esq., a well-regarded mediator who has mediated hundreds of wage and hour class actions. Four attorneys were present on behalf of Defendants, and Plaintiff's three attorneys were also present throughout the mediation.  Two corporate officers of PORCH (General Counsel and Vice President of Human Resources) were also present via Zoom, along with four other corporate representatives of the various Defendants. (Hawkes Decl., ¶ 20.)

Negotiations between the parties were contentious and conducted at arms-length.  The case resolved via the acceptance of a mediator's proposal, and a Memorandum of Understanding was drafted and executed by all parties at the end of the mediation. Finally, in November 2021, the parties reached a comprehensive agreement and executed the present Stipulation of Class Action and PAGA Settlement and Release (hereafter "Settlement," which is attached to Hawkes Decl. as **Exhibit "A."**) (Hawkes Decl., ¶¶ 21-23.)

## III. SUMMARY OF SETTLEMENT TERMS

### A.    Composition of the Settlement Class

For the sole purpose of settling this action, the Parties have stipulated and agreed that the requisites for establishing class certification with respect to the Settlement Class have been met.

The "Settlement Class" is defined as all current and former non-exempt California employees of the Defendants or their present and former parents, subsidiaries, successors or assigns, including without limitation Kandela, LLC, Serviz.com, Inc., and Elite Insurance Group, Inc. The Settlement Class, however,

shall not include any person who signed severance agreements or who submits a timely and valid Request for Exclusion as provided for in this Stipulation of Settlement below.

The Class Period runs from November 23, 2016 to the date of Preliminary Approval of the Settlement.  Additionally, the PAGA Period runs from November 23, 2019 to preliminary approval of the Settlement ("PAGA Period").

(Settlement, at ¶¶ 6-9.)

It is estimated there are approximately 236 Settlement Class Members who worked approximately 12,000 workweeks during the settlement period. (Hawkes Decl., ¶ 21.)

**B.    Amount of Settlement**

Defendants have agreed to pay a non-reversionary gross settlement amount of Five Hundred Thousand Dollars ($500,000) (hereafter "Gross Settlement" or "Maximum Settlement Amount"). *See* Exh. 2 (Settlement, at ¶ 15.) Subject to Court approval, each of the amounts described below will be deducted from the Gross Settlement.[3]

**1.    Settlement Administration Fees & Costs**

The fees and costs associated with retaining a third-party administrator to administer the terms of the Settlement will be deducted from the Gross Settlement. (Settlement, at ¶ 18.) The parties obtained settlement administration quotes from several vendors and ultimately agreed to use Phoenix Settlement Administrators to administer the Settlement because it provided the lower bid of $6,000. (Hawkes Decl., ¶ 34.)

---

[3] An agreed-upon "escalator clause" provides that if the number of workweeks exceeds 12,011 by more than 15% other than due to the passage of time beyond July 28, 2021, the settlement amount will increase by a proportional amount. (Settlement, ¶ 17.)

### 2.      Named Plaintiff Service Award

The Settlement provides for an enhancement award to Plaintiff of up to $10,000 (Settlement, at ¶ 16.c.vi.)  The award is to compensate Plaintiff for the time, expense, and risks she incurred in litigating this action on behalf of the Settlement Class. Plaintiff will file an application for the service award, along with a declaration detailing her work on this case, in connection with moving for final approval of the Settlement. Any amount of the requested service award not awarded by the Court will be included in the distribution to the class and collective. (*Id.*)

### 3.      Class Counsel's Attorneys' Fees

The Settlement provides for an award of class counsel's attorneys' fees of up to one-third (1/3) of the Gross Settlement Amount, i.e. $166,666.67.  (Settlement at ¶ 19.) Plaintiff will file an application for attorneys' fees, along with a detailed lodestar analysis, in connection with moving for final approval of the Settlement. *See, e.g., Hudson v. Libre Tech., Inc.,* 2019 U.S. Dist. LEXIS 196964, *34 (S.D. Cal. Nov. 13, 2019) ("At the preliminary approval stage, the Court does not need to determine attorney's fees."). Any amount of the requested fee award not approved by the Court will be included in the distribution to the Class. (*Id.*).

### 4.      Class Counsel's Costs

The Settlement provides for the reimbursement of class counsel's actual costs of up to $20,000. (Settlement, at ¶ 19.) Plaintiff will file an application for recovery of actual costs in connection with moving for final approval of the Settlement. Any amount of the requested costs not approved by the Court will be included in the distribution to the Class. (*Id.*)

### 5.      PAGA Penalties

With respect to resolution of Plaintiff's PAGA cause of action, the Settlement provides for a payment to the California Labor & Workforce Development Agency (LWDA) of $15,000 for its 75% share of the $20,000

9

allocated to PAGA penalties. The remaining 25% ($5,000) will be included in the distribution to the Settlement Class. (Settlement, at ¶ 16.c.ii.)  *see also* Cal. Labor Code § 2699(i) (providing that "civil penalties recovered by aggrieved employees shall be distributed . . . 75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees.").

### C. Calculation of Individual Settlement Payments

After the above deductions from the Gross Settlement, the balance of approximately $282,333 (hereafter "Net Settlement Amount") will be available for distribution to the Settlement Class. (Settlement, at ¶ 16.c.i.;  ¶ Hawkes Decl., ¶ 21.)  Members of the Class are *not* required to submit a claim form as a condition of receiving an individual settlement payment. Rather, members of the Class will automatically be mailed a settlement payment. (Settlement, at ¶ 16.c.viii.)

Employer-side payroll taxes will *not* be deducted from the Gross Settlement. Rather, any employer-side payroll taxes owing on payments made under the Settlement will be paid by Defendants "separately and in addition to the Maximum Settlement Amount." (Settlement, at ¶ 16.c.i.)

All settlement payment checks will remain valid for one hundred eighty (180) days from their date of mailing by the Settlement Administrator. Any settlement checks remaining uncashed after expiration of that period will be voided. Funds associated with such cancelled checks will, pursuant to California Code of Civil Procedure section 384, be transmitted to International Justice Mission as the *cy pres* recipient. (Settlement, at ¶ 21.)

### D.    Limited Release by Class

The release for members of the Class is limited to claims that "that were litigated in the Action against Defendants or could have been litigated based on the facts and circumstances alleged in the entire Action against Defendants, arising under the Complaint and First Amended Complaint filed in the Southern District of California District Court..." (Settlement, at ¶ 24.)

10

### E.     Notice, Opt Out and Objection Procedures

All members of the Settlement Class will receive, via First Class Mail, a notice of the proposed settlement in the form attached as Exhibit A to the Settlement (hereafter "Class Notice"). (Settlement, at ¶ 16.c.ix.). The Class Notice which will state the number of Workweeks and PAGA Pay Periods allocated to that Class Member, along with his or her estimated Individual Settlement Award. (*Id.*) The pre-printed information based on Defendants' business records shall be presumed to be correct, unless the Class Member submits a dispute containing written credible, evidence to the contrary to the Settlement Administrator and counsel for the Parties. (*Id.*)

Individuals who wish to opt out of the Settlement may mail a Request for Exclusion to the Settlement administrator within thirty (30) days from the mailing of the Class Notice (the "Response Deadline," as defined in paragraph 16.c.i) (Settlement, at ¶ 22.)

Individuals who wish to object to the Settlement are to mail the objection to the Settlement administrator within the Response Deadline (30 days from the mailing of Class Notice) identifying the objector, including his or her contact information, and stating the basis for the objection. (Settlement, at ¶ 23.). Class counsel shall file any objection(s) with the Court at the time of filing the motion for final approval. (*Id.*)

The procedures for opting out of, and objecting to, the Settlement are clearly and simply explained in the Class Notice. (Exh. A to Settlement.)

### IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Under Rule 23(e), preliminary approval is the first of a two-step process whereby the court considers whether a proposed class action settlement should be approved as fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) ("If the [settlement] proposal would bind class members, the court may approve it only after a hearing and finding that it is fair, reasonable, and adequate."); *Huddleston v.*

11

*Harrison Global, LLC,* 2018 U.S. Dist. LEXIS 133018, *4-5 (S.D. Cal. Aug. 7, 2018) ("The Court's approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to Class Members, whether final approval is warranted.").

"At the preliminary approval stage, a full fairness analysis is unnecessary," as "[c]loser scrutiny is reserved for the final approval hearing." *Thompson v. Costco Wholesale Corp.,* 2017 U.S. Dist. LEXIS 24964, *15-16 (S.D. Cal. Feb. 22, 2017) (internal quotation marks omitted). Rather, "[t]he court's responsibility at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Walters v. Target Corp.*, 2019 U.S. Dist. LEXIS 207489, *13 (S.D. Cal. Dec. 4, 2019) (quoting Manual for Complex Litigation, Fourth § 21.632 (FSC 2004)).

"If the proposed settlement appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then preliminary approval of the settlement should [be] granted." *Walters,* 2019 U.S. Dist. LEXIS 207489 at *13 (internal quotation marks omitted); *see also Thompson,* 2017 U.S. Dist. LEXIS 24964 at *15 (same). Each of these requirements is satisfied here.

### A.    The Settlement Resulted from Informed Arms-Length Negotiations.

As described above, the Settlement was reached through arms-length negotiations following comprehensive informal discovery and investigation. In preparation for the mediation, Plaintiff's counsel obtained and analyzed all of Defendants' relevant policies and practices regarding the wage and hour claims at issue in this lawsuit. (Hawkes Decl., ¶ 18.) Plaintiff's counsel also obtained and analyzed pertinent timekeeping and payroll data of a large sampling of the

12

Settlement Class and subsequently calculated the potential recovery for the Class. (*Id.*)

The Settlement is a result of months of arms-length negotiations regarding the final terms of a comprehensive settlement, following the acceptance of a mediator's proposal at the end of the July 28, 2021 mediation. (Hawkes Decl., ¶¶ 19-23.) In short, the Settlement is the "product of an arms-length, non-collusive, negotiated resolution." *See Rodriguez v. W. Publ'g Corp.,* 56 F.3d 948, 965 (9th Cir. 2009).

### B.     The Class-Wide Release is Narrowly Tailored

The scope of the Settlement Class release is in accordance with applicable law, as it is confined to claims that "that were litigated in the Action against Defendants or could have been litigated based on the facts and circumstances alleged in the entire Action against Defendants, arising under the Complaint and First Amended Complaint filed in the Southern District of California District Court..." (Settlement, at ¶24.). *See Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) ("[W]e have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that give rise to the settlement."); 4 Newberg on Class Actions (4th Ed. 2002) § 12:15, pp. 310-311 ("A clause providing for the release of claims may refer to all claims raised in the pending action, or it may refer to all claims, both potential and actual, that may have been raised in the pending action with respect to the matter in controversy.").

### C.     The Amount Offered in Settlement Falls Within the Range of Possible Approval.

"To evaluate the range of possible approval criterion, . . . courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hudson v. Libre Tech., Inc.*, 2019 U.S. Dist. LEXIS 196964, *30-31 (S.D. Cal. Nov. 13, 2019) (quoting *Vasquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d

13

1114, 1125 (E.D. Cal. 2009)). Here, the amount of the Settlement is fair and adequate when viewed in light of the risks and delays associated with continued litigation.

The overtime damage analysis conducted by Plaintiff's counsel, in coordination with their expert, projected a maximum potential recovery for the unpaid overtime in this lawsuit pursuant to Cal. Labor Code § 1194, exclusive of statutory attorneys' fees and costs, ranging between $20,000 and $30,000. This estimate was based upon an analysis of the large sampling of payroll and time records, in an effort to determine the "delta" between the overtime pay rates actually paid to employees compared to what the pay rates would have been had employees' commission payments be added to the regular rate of pay. (Hawkes Decl., ¶ 24.)   It was determined from the sample that the phenomenon of commissions not being included in employees' overtime rates of pay did not regularly occur since (a) commissions were paid only once per month and (b) commissioned employees worked overtime infrequently. (*Id.*)

The most substantial amount of recovery available to the Class was based upon Plaintiff's claim for "waiting time penalties" pursuant to Cal. Labor Code §§ 201-203 and based upon the theory that former employees were not paid all overtime wages due and owing at the time of their separation of employment as a result of Defendants' miscalculation of the regular rate of pay. Plaintiff's counsel projected a maximum potential recovery in the range of $325,000 to $350,000 for this claim.  (Hawkes Decl., ¶ 25.)

These two main theories of liability result in an estimated maximum potential recovery of approximately $380,000.  As noted above, the net payout to the class and collective, after Court-authorized deductions, is projected to be approximately $282,000, which amounts to 74% of the maximum amount the Class may recover in this action. (*Id.*)

This greatly exceeds the percentages of recovery that have been found sufficient to be fair and adequate in class settlements. *See, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of "roughly one sixth of potential recovery" to be "fair and adequate"); *Farrell v. Bank of Amer., N.A.,* 327 F.R.D. 422, 430 (S.D. Cal. 2018) (finding recovery of "about nine percent of the maximum amount the Class could recover through trial" to be "meaningful" and to "support approval" of the settlement); *Greko v. Diesel U.S.A., Inc.,* 2013 U.S. Dist. LEXIS 60114, *14-15 (N.D. Cal. Apr. 26, 2013) (finding recovery of "approximately 24 percent" to be reasonable); *Glass v. UBS Fin. Servs.,* 2007 U.S. Dist. LEXIS 8476, *28 (N.D. Cal. Jan. 26, 2007) (finding recovery of "25 to 35% of the estimated actual loss" to be "fair, reasonable, and adequate").

As a result, the risks and delays of continued litigation justify this modest compromise.

With respect to Plaintiff's PAGA claim, the amount recoverable faces great uncertainty. While Plaintiff's counsel estimates the maximum civil penalty potentially recoverable on this claim ranges from $100,000 to $180,000,[4] it is unlikely that the maximum amount would ultimately be awarded by this Court. The PAGA statute grants courts discretion to "award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *See* Cal. Labor Code § 2699(e)(2). The California Court of Appeal has construed this language to grant trial courts "broad discretion to award a lesser amount." *See Huff v. Securitas Security Servs. USA, Inc.,* 23 Cal. App. 5th 745, 759 (2018). Courts have repeatedly relied upon such discretion to substantially reduce the amount of PAGA

---

[4] PAGA penalties accrue on a "per pay period" basis (Cal. Labor Code § 2699), and these estimates were calculated after examining the sampling of records to determine the frequency of instances in which employees received commission and incurred overtime hours during the same pay period. (Hawkes Decl., ¶ 26.)

15

penalties ultimately awarded. *See, e.g., Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1135 (2012) (affirming reduction of PAGA penalties by 30%); *Fleming v. Covidien Inc.,* 2011 U.S. Dist. LEXIS 154590, *8-9 (C.D. Cal. Aug. 12, 2011) (reducing $2.8 million penalty" under PAGA to just "$500,000" – an 82% reduction).

In light of all of these risks and uncertainties, a settlement that allocates $20,000 to PAGA penalties and guarantees the Class a payout of 75% of the maximum amount they could potentially recover at trial for the underlying alleged Labor Code violations is fair and reasonable.

**D.     The Proposed Notice Plan Complies with Applicable Law.**

Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). These requirements are satisfied.

The Settlement provides that, within 14 days after the Court enters an order granting preliminary approval, Defendants shall provide the Settlement Administrator the pertinent Class data, including, among other things, name, address, email address, social security number, and number of qualifying California overtime hours worked. (Settlement, at 20.a.) Upon receipt of that data, the Settlement Administrator will perform a search based on the National Change of Address Database and/or conduct a skip trace to determine the most up-to-date addresses. *See* Exh. 2 (*Id.*). The Settlement Administrator will then send all members of the Class the Class Notice via First Class U.S. Mail. *See* Exh. 2 (*Id.*). For any mailings that are returned as undeliverable, the Settlement Administrator will re-mail the Class Notice to any forwarding address affixed thereto and, if no

forwarding address is provided, the Settlement Administrator will attempt to determine a correct re-mailing address by the use of skip-tracing and any other methods it deems economically reasonable and consistent with industry practice. *See* Exh. 2 (Settlement, at 20.b.)

The Class Notice describes the key terms of the Settlement in sufficient detail to alert those who may wish to opt out or come forward and object to the Settlement. *See* Class Notice, Exh. A to Settlement. In this regard, the Class Notice (1) describes the nature of the lawsuit and claims at issue, (2) defines the Settlement Class, (3) explains the amount of the Settlement and how individual class member settlement payments will be calculated, (4) discloses the attorneys fees' and class representative service payment that will be requested, (5) details the claims that are being released, (6) explains how a member of the Class can opt out of or object to the Settlement, (7) discloses the time and place of the final approval hearing, and (8) displays the contact information for class counsel and the Settlement Administrator and advises that either may be contacted to answer questions about the Settlement. *See Id.*

In short, the procedure for providing notice and the content of the notice constitutes the best practicable notice and complies with the requirements of Rule 23 and due process.

### E. The Proposed Payments to Plaintiffs for Attorneys' Fees and Litigation Expenses Are Reasonable

At the final approval hearing, and through separate motion, Plaintiffs' counsel will seek attorneys' fees in an amount not to exceed $33^{1/3}\%$ of the value of Maximum Settlement Amount. This percentage has been approved on numerous occasions in California and federal courts. *See,* Newberg on Class Actions § 14:6 (4[th] ed. 2002 and Supp. 2004), *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294. In fact, empirical studies have shown that whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of

17

the recovery.  *Chavez v. Netflix, Inc.* (2008) 162 Cal. App. 4th 43, 66, fn. 11 [*quoting Shaw v. Toshiba America Information Systems, Inc.* (E.D.Tex. 2000) 91 F. Supp. 2d 942, 972.].

To ensure that this case was properly prosecuted, Plaintiffs' counsel was precluded from taking on other cases, and in fact had to turn away other meritorious fee generating cases.  This case was accepted on a contingency basis, with Plaintiffs' Counsel advancing significant funding for litigation expenses.  Due to the high stakes involved in terms of both certification and merits issues, wage and hour class actions are vigorously defended, and this case was no exception. (Hawkes Decl., ¶ 27.)

At the final approval hearing, Plaintiffs' counsel will also seek reimbursement of litigation expenses in an amount not to exceed $20,000, which will paid from the Maximum Settlement Amount. If preliminary approval is granted, the requested attorneys fees and reimbursement of litigation expenses amount will be clearly disclosed in the Class Notice, and all Class Members will have the opportunity to object to or otherwise comment on the proposed amount.

### F.    The Proposed Enhancement Award to Plaintiffs Is Reasonable

Upon expiration of the 30-day notice period, Plaintiffs will apply to the Court for an enhancement award in the amount of $10,000, in consideration for the services rendered on behalf of the settlement class. [Settlement, ¶ 16.c.vi.]  The named Plaintiff performed her duties admirably by working with their counsel, responding to discovery requests, communicating with putative class members, attending mediation, and reviewing numerous drafts of the comprehensive Settlement and proposed Class Notice.[5]

The requested class representative service awards are well within the accepted range of awards.  *See, e.g., Frieri*, 2019 U.S. Dist. LEXIS 207481 at *22 (preliminarily approving "proposed $10,000" service payment to named plaintiff in

---

[5] Hawkes Decl., ¶_28.

wage and hour class settlement); *Tapia v. Zale Del. Inc.,* 2017 U.S. Dist. LEXIS 59869, *13-14 (S.D. Cal. Apr. 18, 2017) (same); *Watkins v. Hireright, Inc.,* 2016 U.S. Dist. LEXIS 136200, *11 (S.D. Cal. Sept. 30, 2016) (finally approving "the $10,000 incentive award" to class representative as "reasonable"); *Louie v. Kaiser Foundation Health Plan, Inc*., (S.D. Cal. Oct. 06, 2008) 2008 U.S. Dist. LEXIS 78314,*6 (awarding $25,000 service award to each of six plaintiffs in overtime class action); *Glass v. UBS Fin. Servs.*, (N.D. Cal. Jan. 27 2007) 2007 U.S. Dist. LEXIS 8509, *52 (awarding $25,000 enhancement award in overtime class action and a pool of $100,000.00 in enhancements)*; Van Vranken v. Atlantic Richfield Co.*, (N.D. Cal. 1995) 901 F. Supp. 294, 299-300 (awarding enhancement award of $50,000).   As explained in *Glass*, enhancement awards are routinely awarded to class representatives to compensate the employees for the time and effort expended on the case, for the risk of litigation, for the fear of suing an employer and retaliation therefrom, and to serve as an incentive to vindicate the statutory rights of all employees.  *Glass v. UBS Fin. Servs.,* 2007 U.S. Dist. LEXIS 8509 at *18.

Finally, the fact that the Settlement authorizes the Plaintiff to request an enhancement award does not constitute improper preferential treatment. *See* Exh. 2 (Settlement at ¶ 5). "[T]he Ninth Circuit has recognized that service awards to named Plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.,* 2011 U.S. Dist. LEXIS 48878, *28 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) and *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958-69 (9th Cir. 2009)).

Plaintiff will submit a declaration describing her contributions to this lawsuit and the time, risks, and burdens borne by her when applying for a service award at the time of final approval.

19

## V.   CLASS CERTIFICATION IS APPROPRIATE

The Settlement Class should be certified as it meets the requirements of FRCP 23(a) and 23(b)(3). Pursuant to the Settlement, Defendants have agreed not to contest class certification solely for the purposes of settlement.[6]

### A.   The Class is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." *Nguyen v. Radient Pharm. Corp.* (C.D. Cal. 2012) 287 F.R.D. 563, 569; 1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed.).  Here, the Parties estimate there are approximately 236 Class Members, thus satisfying the numerosity requirement. (Hawkes Decl., ¶ 21.)

### B.   There are Common Questions of Fact and Law

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Here, there are common questions of law and fact including, but not limited to, (a) whether Defendants complied with applicable laws affecting Plaintiff and the Settlement Class under the California Labor Code and the Wage Orders of the California Industrial Welfare Commission; and (b) whether Plaintiff and the Settlement Class are entitled to alleged wages, premiums, penalties, interest, and attorneys' fees and costs.

---

[6] Pursuant to the Settlement, "If the Court does not grant either preliminary or final approval of this Settlement, or approval is reversed upon appeal, then the Parties revert to their previous positions, all Parties to this Settlement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court and Defendants will not stipulate to class certification and will contend that a representative action is not appropriate." (Settlement, at ¶ 33.)

### C.   The Class Representative's Claim is Typical of Those of Other Class Members

Rule 23(a)(3) requires that the Class Representative's claims be typical of those of the Class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's class claims stem from Defendants' allegedly uniform wage and hour practices, as demonstrated in the sampling of records and documents produced by Defendants, thus satisfying the typicality requirement of Rule 23(a)(3).

### D.   Class Representative and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class. FRCP 23(a)(4). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff and her counsel are adequate. First, Plaintiff and her Counsel have vigorously prosecuted the action on behalf of the Class; and Plaintiff was likewise actively engaged and regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. (Hawkes Decl., ¶ 29.) Second, Plaintiff has retained three law firms highly experienced in the employment and class action practice areas. *Id.* Third, there are no facts suggesting that either the

21

proposed class representatives or class counsel have any potential or actual conflicts of interest with the class members.  Plaintiff's interest in the litigation is not antagonistic to any of the class.  Absent a showing to the contrary, Plaintiffs' adequacy as class representatives must be assumed.  *Guarantee Ins. Agency Co. v. Mid-Continental Realty Co.* (N.D. Ill. 1972) 57 F.R.D. 555, 565-66.

### E.    Common Issues of Law and Fact Predominate

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Rule 23(b)(3) allows certification of a class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001)).

As explained herein, Plaintiff's class claims are based upon manageable theories of liability that can be adjudicated via an examination of employees' payroll records and employment history. Here, questions of law and fact clearly predominate over any issues affecting individual Class members.

## VI.   CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, enter the proposed preliminary approval order submitted herewith, and schedule a final approval hearing.

1

2

3     DATED:  November 22, 2021

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

BLANCHARD KRASNER & FRENCH


 */s/ David C. Hawkes*
David C. Hawkes

Counsel for Plaintiff Ariana Preston

23